**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CARLTON MARBURY,** | ) | **CASE NO. 1:09CV407** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **v.** | ) | |
| | ) | |
| **TIM HICKS, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **MEMORANDUM OPINION & ORDER** |

On February 23, 2009, Carlton Marbury ("Marbury"), *pro se* plaintiff, and currently an

inmate at the Southern Ohio Correctional Facility ("SOC"), filed an action pursuant to 42 U.S.C.

§ 1983 alleging constitutional violations against numerous Mansfield Correctional Institution

("MCI") employees.  Specifically, the verified complaint alleged that the Defendants inflicted

unnecessary pain upon Marbury and then were deliberately indifferent to his alleged serious

medical needs.[1]  Marbury requested, *inter alia*, monetary and punitive damages, and injunctive

---

[1]As to the three defendants at issue in the summary judgment motions, the verified
complaint states:

> Tim Hicks, Jr. - Assault and Battery of breaking my finger with malicious intent
> and negligent [sic].  Verbally gave threats of bodily harm while cursing.  Was
> overly aggressive and temperamental when there was no resistance by Inmate
> Marbury.  C/O Hicks, Jr. handcuffed me and broke finger instantly for a less than
> minor detail.  Overstepped chain of command upon arrival.  Ignored warning of

relief.  The parties consented to the jurisdiction of the undersigned Magistrate Judge pursuant to

the authority of 28 U.S.C. § 636(c)(2).  Presently before the Court are two motions for summary

judgment filed by Marbury (Doc. Nos. 60, 67) and a summary judgment motion filed by

Defendants.  (Doc. No. 84.)  For the following reasons, Marbury's motions for summary

judgment are denied and Defendants' motion for summary judgment is granted as to C/O Hicks,

C/O Claytor, and Lt. Shaw.

## I.  Procedural History

On February 23, 2009, Marbury filed the instant § 1983 action against numerous

defendants.  The District Court granted in part, Defendants' motion to dismiss, eliminating all

counts, except for a cruel and unusual punishment claim under the Eighth Amendment based

upon an alleged assault and battery occurring on June 30, 2008, by Defendants, Corrections

Officer Tim Hicks, Jr. ("C/O Hicks"), Corrections Officer Brian Claytor ("C/O Claytor"), and

---

verbal medical condition of heart condition.  He purposely lied on conduct report
to cover injury he caused on 6/30/08.  Rule Infraction Board changed to lesser
charge.

Lt. Shaw – Inappropriate supervision and neglect.  Ignored verbal warning of
medical heart condition and sprayed me in face with mace without proper
assessment of verbal plea of pain given by C/O Hicks, Jr. of induced pain given
on broken finger while handcuffed, pinned on door by two C/Os then maced.

C/O Claytor – failed to protect.  Barrage of pain given or verbal threats and
inform Lt. Shaw of C/O Hicks, Jr. uncontrollable rage and unnecessary force;
witnesses and allowed physical torture to finger and body to be knocked into
doors and tables allowing unprofessional conduct.

(Doc. No. 1 at 3-4.)

Lt. Pam Shaw ("Lt. Shaw") (collectively referred to as "the Defendants.").[2]  (Doc. No. 6.)

Marbury contends that his finger was maliciously fractured by C/O Hicks, resulting in pain and

suffering.  (Doc. No. 1 at 5.)  Marbury also contends that C/O Claytor and Lt. Shaw failed to

protect him from C/O Hicks.  *Id.*

Subsequently, Marbury filed two motions for leave to amend his complaint.  (Doc. Nos.

24, 34.)  On December 16, 2009, the Court granted the motions in part, allowing the action to

also proceed against C/O Windom regarding a September 24, 2008, altercation.

Marbury filed several summary judgment motions regarding the June 30, 2008, incident.

The Court, *sua sponte*, denied Marbury's first motion after he filed two additional motions in

February, 2010.  The two latter motions are presently before the Court.  (Doc. Nos. 60, 67, 69.)

On March 18, 2010, Defendants filed their own motion for summary judgment regarding the

---

[2]Marbury's complaint does not state whether the defendants are sued in their individual or official capacities.  In the Sixth Circuit, where a complaint seeking monetary damages against a state official under 42 U.S.C. § 1983 does not clearly state that the official is sued in his individual or personal capacity, the court must treat the lawsuit as one against the defendants in their official capacities.  *See Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).  In an official-capacity action, Defendants cannot claim any personal immunities, such as qualified immunity. *See Alkire v. Irving*, 330 F.3d 802, 810-811 (6th Cir. 2003) (*citing Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099 (1985)).

However, although *Wells* has not been formally overruled, the Sixth Circuit has clarified that the failure to state explicitly whether defendants are sued in their individual capacities "is not fatal if the course of proceedings otherwise indicates that the defendants received sufficient notice."  *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (*en banc*), *cert. denied*, 536 U.S. 922 (2002).  The "course of proceedings" test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendants had actual knowledge of the potential for individual liability. Here, the Defendants raised qualified immunity as an affirmative defense in their answer, therefore, they are on notice they are being sued in their individual capacities.  (Doc. No. 17 at 2.)  However, as the Defendants did not argue qualified immunity as a defense in their summary judgment motion, the Court does not address that issue.

June 30 incident as well as a brief in opposition to Marbury's motions.  (Doc. Nos. 84, 85.)  In response, Marbury filed various documents, most of which were incoherent or duplicitous.[3]

None of the documents Marbury filed included the evidence necessary under Fed. R. Civ. P. 56(e) to oppose Defendants' summary judgment motion.  The Court, therefore, allowed Marbury additional time to submit proper affidavits as required.  (Doc. No. 108.)  The Court also found Marbury to be a vexatious litigant and barred him from filing any further documents not responsive to a court order or Local Rule 7.1 unless he first requested leave to do so.  (Doc. No. 111.)

On April 27, 2010, Marbury filed his updated opposition, a properly sworn declaration to Defendants' summary judgment motion, together with exhibits.  (Doc. No. 113.)

On May 11, 2010, Defendants filed a motion to strike Exhibits A through F of Marbury's Declaration (Doc. No. 113-1 through 6) arguing the exhibits were not properly authenticated. (Doc. No. 119.)  At the May 24, 2010, telephone status conference, the Defendants agreed to withdraw this motion, but have not done so.

In a similar case involving prison medical records on which the plaintiff relied to oppose a summary judgment motion, the court addressed the law as follows:

In a summary judgment motion, a party relying on affidavits and records must lay

_____

[3]For example, on February 16, 2010, Marbury filed two documents, both titled "Memorandum of Law."  (Doc. Nos. 64, 65.)  On March 24, 2010, Marbury filed a "Request for Judgment by Default with Evidence of Support."  (Doc. No. 86.)  The following day, he filed both a "Request for Forensic Expert to present evidence of forgery" and "Request for subpoena for identification."  (Doc. Nos. 87, 88.)  After filing his opposition to Defendants' summary judgment motion (Doc. No. 90), he then filed a document titled "Notice of filing- there is a genuine issue of material fact."  (Doc. No. 92.)  On April 5, 2010, Marbury filed a "Memorandum regarding judgment as a matter of law."  (Doc. No. 98.)  Many of these documents included exhibits.  Defendants responded to all of Marbury's filings.

a proper foundation.  *See Beyne v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182
(9th Cir. 1988).  The court agrees that "whether the authentication requirement
should be applied to bar evidence when its authenticity is not actually disputed is,
however, questionable."  *Burch v. Regents of the University of California*, 433
F.Supp.2d 1110, , 1120 (E.D. Cal. 2006).  "[W]here the objecting party does not
contest the authenticity of the evidence submitted, but nevertheless makes an
evidentiary objection based on purely procedural grounds," then the court should
consider the evidence.  *Id.*  In such a situation, it would appear equally probable
that the documents are what they purport to be as it is that they are not.  *Id*.

*Sanchez v. Penner*, 2009 WL 3088331, *5 (E.D. Cal. Sept. 22, 2009).  The *Sanchez* court noted

that the defendant's objection was suspect because the documents the plaintiff submitted were

located in the prison system, "either in plaintiff's files or in the prison bureaucracy."  *Id*.  The

court continued, "if there were a valid basis for contesting their authenticity, defendant could

unearth and present it.  But they have not."  *Id*.  The court overruled defendant's objections for

lack of proper foundation and lack of authentication.  *Id*.  Here, the Defendants argue simply

that the documents have not been properly authenticated, yet they originate directly from the

prison.   As Marbury's exhibits are obtained from prison records, it is probable that the

documents are what they purport to be.  The Court, therefore, denies Defendants' motion to

strike Exhibits A through F of Marbury's Declaration.  (Doc. No. 119.)

## II. Facts

As the parties dispute some facts, the Court will accept the non-conflicting facts in

Marbury's verified complaint and/or affidavit filed in response to Defendants' summary

judgment motion.  (Doc. Nos. 1, 113.)  *See Williams v. Griffin*,  952 F.2d 820, 823 (4th Cir.

1991); *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979) (verified complaint filed by a *pro se*

prisoner, stating factual allegations based on personal knowledge, is to be considered as the

equivalent of an affidavit.); *see also Ware v. Frantz*, 87 F.Supp.2d 643, 647 (S.D. Miss. 1999)

5

(*quoting Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) (holding that "non-movant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, [his] previous testimony.")

Marbury alleges that C/O Hicks, C/O Claytor, and Lt. Shaw were involved in an assault and battery.  (Doc. No. 1 at 3-4.)  He specifically alleges that he was "unjustly provoked" by C/O Girtman, who is not a party to this action, by Girtman making "warranted threats of retaliation and harassment."  (Doc. No. 113, Marbury Affid. ¶ 1.)  The Defendants provide background information, not disputed by Marbury, as to the June 30, 2008, altercation.  C/O Girtman explains that according to prison policy, inmates must line up at the beginning of a work day to receive work clothing and materials.  (Doc. No. 84-2, Girtman Decl. ¶ 3.)  This procedure for obtaining their materials is required because property is often stolen or misused.  (Doc. No. 84 at 3.)  C/O Girtman further explains that on the day of the incident, Marbury cut in front of the line to obtain his items.  (Girtman Decl., ¶¶ 3-4.)  C/O Girtman informed Marbury that pushing in front of other inmates was not acceptable behavior.  (Girtman Decl., ¶ 5.)  Marbury responded to the effect, "I don't give a f[ ] about these individuals, all I want is my stuff, and I want to get out of here."  *Id*.  C/O Girtman told Marbury that he needed to get back in line.  (Girtman Decl., ¶ 6.)  However, because Marbury appeared agitated, he ordered Marbury to sit at a table.  *Id*.  C/O Girtman tried to have a conversation with Marbury about his behavior.  (Girtman Decl., ¶ 7.)  Marbury responded by acting extremely hostile, using profanity, and behaving irrationally.  *Id.*  C/O Girtman told Marbury that he was to return to his cell to calm down.  (Girtman Decl., ¶ 8.)  C/O Girtman then went to his desk to call for assistance.  *Id*.  Marbury followed, slamming his hands on the desk, and using more profanity.  *Id*.  C/O Girtman called for C/O Claytor to escort

6

Marbury to his cell. (Girtman Decl., ¶ 9.) Upon C/O Claytor's arrival, Marbury cooperated in being handcuffed. (Marbury Affid. ¶ 2; Doc. No. 84-3, Claytor Decl., ¶ 4; Doc. No. 84-5, C/O Weisman Decl., ¶ 3.) Moments later, Lt. Shaw and C/O Hicks appeared at the scene. (Doc. No. 84-1, Hicks Decl., ¶ 3; Doc. No. 84-4, Shaw Decl., ¶ 2.)

Upon arrival, C/O Hicks and Lt. Shaw found Marbury already handcuffed and appearing to be extremely agitated or violent. (Hicks Decl., ¶ 4, Shaw Decl., ¶ 4.) C/O Hicks, applying an escort technique pursuant to his training, began leading Marbury out of the area. Marbury then pulled away, elbowing C/O Hicks in the mouth causing a swollen lip. (Hicks Decl., ¶ 5.) Lt. Shaw and C/O Girtman affirmed that Marbury elbowed C/O Hicks. (Shaw Decl., ¶ 4; Girtman Decl., ¶ 11.) In fact, Lt. Shaw noted that Marbury was extremely violent, "twisting his body and throwing himself around, like a 'raging bull.'" (Shaw Decl., ¶ 4.) Lt. Shaw ordered Marbury to stop struggling. (Shaw Decl., ¶ 5.) When he did not, and in order to maintain control, Lt. Shaw proceeded to spray Marbury with mace. *Id*.

Because of the use of pepper spray, Marbury was promptly taken to the prison's medical center where he was examined by Nurse Alice Cain and Nurse Rhonda Butke. (Hicks Decl., ¶ 11, Cain Decl., Butke Decl.) Nurse Cain stated that Marbury did not complain about a finger injury, but he did complain of pain from a preexisting shoulder injury. (Cain Decl., ¶ 3.) Moreover, Nurse Butke performed a grip test on Marbury and reported equal pressure from both hands.[4] (Butke Decl., ¶ 4.) The medical records indicate that Marbury first complained of finger pain in a health services request form dated July 2, 2008, and received by the medical staff on July 5, 2008. (Doc. No. 123; Bates No. 000589.) On July 7, 2008, the medical staff

---

[4]Defendants offer no explanation as to why a grip test was performed.

examined Marbury's finger.  (Cain Decl., at ¶ 4.)  X-rays taken on July 17, 2008, showed a

fracture of the small finger on his left hand.  (Doc. No. 38-1 at 3.)

Marbury's version of the facts differ subsequent to C/O Hicks' arrival.  He alleges that

C/O Hicks "immediately attacked" Marbury, who was already handcuffed, based upon "racial

motivation" and placed "malicious and sadistic pressure on Inmate Marbury's finger."

(Marbury's Affid. at ¶¶ 3, 4.)  In the complaint, however, Marbury states that C/O Hicks

handcuffed him, breaking his finger instantly.  (Doc. No. 1 at 3.)  Marbury also alleges that C/O

Hicks threatened him with bodily harm and torture and then broke his finger.  *Id.* at ¶¶ 4, 6.

Marbury states that he now suffers lifelong deformity to his finger, and must take medication

(neurotins) for pain and numbness.  *Id.* at ¶ 7 (a), (b).  He further contends that an "EMG"

confirmed the numbness in his fingers.[5]  *Id*. at ¶ 7 (c), Exh. A.

Marbury also disputes that he was seen by Nurse Butke.  (Doc. No. 91.)  He contends

that he was seen by Nurse Cain and Dr. Airaldi, and that he complained of finger pain to Dr.

Airaldi.[6]  (Marbury Affid., ¶ 7(f).)  Marbury further disputes that he elbowed C/O Hicks.  Upon

review of Marbury's filings, in Exhibit F to his Declaration, Marbury acknowledged to his

mental health counselor at the prison that "[h]e doesn't remember hitting the officer, but doesn't

deny the possibility of it happening."  (Doc. No. 113-6, Marbury's Decl., at Exh. F.)  Marbury

---

[5]An EMG is an electromyograph, a test used to detect electrical activity in muscles.  *See* Dorland's Illustrated Med. Dictionary, 30th ed. (2003).

[6]Marbury did not present any evidence of his consultation with Dr. Airaldi.  The Court, however, upon review of the complete medical record provided in June, 2010, found documentation indicating that Dr. Airaldi did examine Marbury on June 30, 2008.  Marbury reportedly complained of right arm, elbow and shoulder pain.  The doctor diagnosed "muscle sprain" and prescribed Indocin.  (Doc. No. 123; Bates No. 000452.)

further contends that he has continuous pain and swelling, and that he is still unable to move his finger.  (Marbury Affid., ¶ 7(d).)

Marbury also filed a grievance with prison authorities regarding C/O Hicks' conduct in allegedly fracturing his finger.  (Doc. No. 38-1 at 1.)  The Rules Infraction Board concluded that "slight force" was used against Marbury, but no further investigation was requested.  *Id.*  The Board further found Marbury guilty of violating Rules 4 and 20,[7] and he was placed in Local Control ("LC") for ten days.  (Doc. Nos. 54-3 at 3, 51-1 at 2; 34-1 at 7.)  Subsequently, he was transferred from MCI, a security level three prison, to SOC, a security level four prison.

### III. Standard of Review

Federal Rule of Civil Procedure 56(c)(2) governs summary judgment motions and states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Rule 56(e) specifies the materials that may be submitted in connection with a motion for summary judgment:

> (1) **In General**.  A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

> (2) **Opposing Party's Obligation to Respond.**  When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule–set out specific facts showing a

---

[7]Pursuant to Ohio Admin. Code § 5120-9-06, Rule 4 is "[c]ausing, or attempting to cause, physical harm to another," and Rule 20 is "[p]hysical resistance to a direct order."

genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id*.   "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery."  *Liberty Lobby*, 477 U.S. at 257.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S.

10

372, 380, 127 S.Ct. 1769, 1776 (2007).  Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id*.

Courts are given wide latitude in considering any document of record in its analysis of a summary judgment motion, regardless of when the document was filed and for what purpose. For example, an affidavit that is on file in a case, regardless of the purpose for which it was prepared and filed, can be considered by the court in deciding a motion for summary judgment. *See Carmona v. Toledo*, 215 F.3d 124, 132 n. 7 (1st Cir. 2000); *McLaughlin v. Liu*, 849 F.2d 1205, 1206 n. 3 (9th Cir. 1988); *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230, 236 n. 7 (10th Cir. 1968); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 2722, at 378 (3d ed. 1998).

The summary judgment standard does not change simply because the parties presented cross-motions.  *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  The fact that both parties have moved for summary judgment does not mean a court must grant judgment as a matter of law for one side or the other; rather, a "court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Id*.; *Profit Pet v. Arthur Dogswell, LLC,* 603 F.3d 308, 312 (6th Cir. 2010).

It is well settled that "inartfully pleaded allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519,

11

520 (1972)).  Further, allegations in *pro se* pleadings are entitled to "liberal construction" which sometimes requires "active interpretation ... to encompass any allegation stating federal relief." *Id*.

## IV.  Law and Analysis

Section 1983 provides a private right of action for those persons subject to a deprivation of the "rights, privileges or immunities" guaranteed under the Constitution when that deprivation is effected by a person operating "under color of any statute, ordinance, regulation, custom, or usage" of a governmental entity.  42 U.S.C. § 1983.  "[T]he violation of a federally protected right" is necessary for there to be liability against a government official under § 1983.  *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008); *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005).  In addition, the deprivation must be committed by a person acting under color of law.  *Grinter* at 572; *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

Under the Prison Litigation Reform Act ("PLRA"), prisoners must properly exhaust "such administrative remedies as are available" prior to filing a section 1983 action.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  There is no dispute that Marbury exhausted his administrative remedies as required.

### A.  Eighth Amendment - Cruel and Unusual Punishment against C/O Hicks

Marbury contends that C/O Hicks used excessive force in violation of the Eighth Amendment when he allegedly fractured Marbury's finger.  Marbury first claimed this happened when Hicks handcuffed him, but later claimed it happened when Hicks attempted to escort him to his cell.  (Doc. No. 60 at 2; Doc. No. 67 at 3; Doc. No. 113 at 2.)  Defendants contend that C/O Hicks used only the amount of force necessary to maintain control over Marbury.  (Doc. No.

12

84 at 8-9.)  Moreover, the Defendants argue that the record demonstrates there was no evidence that Marbury complained of finger pain until July 2, 2008.  (Doc. No. 84 at 5.)  The Defendants also contend that the Court should give no weight to Marbury's allegation of excessive force as he offers conflicting statements as to how his finger was broken, relying on case law which holds that a party cannot create a factual dispute by contradicting his own previous statement.  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).  (Doc. No. 118 at ¶ 4.)

The Eighth Amendment provides that the use of excessive force against prisoners may constitute cruel and unusual punishment.  *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995 (1992).  However, not every use of intentional force upon an inmate by a prison official will rise to the level of an Eighth Amendment violation.  *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).  "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment."  *Id*. (citations omitted).  In order to determine if prison officials used improper force or punishment, the court must look at the objective nature of the force used, the resulting harm, and the subjective intent of the officers.  *See Wilkins v. Gaddy*,  – U.S. – , 130 S.Ct. 1175 (2010); *Hudson*, 503 U.S. at 7.

The objective component of an Eighth Amendment claim of cruel and unusual punishment based on excessive force used by prison guards focuses on the effect of the guards' conduct.  *See McGowan v. Cantrell*, 2010 WL 446914, *11, Case No. 1:05cv334 (E.D. Tenn., Feb. 2, 2010); *Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000).  Objectively, a plaintiff must establish that the use of force reached constitutional dimensions.  A *de minimis* use of force will rarely suffice to state a constitutional claim, however, a plaintiff is not required to show the

13

application of force resulted in serious injury.  *Hudson*, 503 U.S. at 8.  Rather, the key inquiry under *Hudson* is whether the alleged conduct involved "unnecessary and wanton infliction of pain."  *Id*.

The most pertinent inquiry under the subjective prong is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7.  In making this determination, the court must balance the following factors: (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied.  *See Hudson*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Campbell v. Smith*, 2010 WL 1542644, *4 (Case No.08-3668) (D.S.C. Apr. 19, 2010).

The *Wilkins* Court explained that its holding in *Hudson* did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Wilkins*, 130 S.Ct. at 1178 (*quoting Hudson*, 503 U.S. at 7).  Further, the Court opined that requiring a showing of injury would permit any punishment, "no matter how diabolic or inhuman," absent some quantum of injury.  *Wilkins* at 1178 (*quoting Hudson*, 503 U.S. at 9).  The Court did not want an inmate, who was the victim of excessive force, to lose the ability to pursue such a claim because of "the good fortune to escape without serious injury."  *Wilkins* at 1178-1179.  The Court did note, however, that the absence of serious injury is not irrelevant.

14

The extent of injury could indicate whether the use of force was thought to be necessary, and it could provide an indication of the amount of force actually applied.  *See Wilkins* at 1178.  A "push or shove," without a resulting discernible injury, almost always fails to state a claim for excessive force because, "'[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Wilkins* at 1178 (*quoting Hudson*, 503 U.S. at 9).

Moreover, when evaluating an Eighth Amendment excessive force claim against prison officials, a court must keep in mind that "prison administrators are charged with the responsibility of ensuring the safety of prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" *Whitley* at 302 (*quoting Hudson*, 468 U.S. 526-27.)  Courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance."  *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).  "The use of force is necessary when an inmate creates a disturbance or becomes insubordinate."  *Vicks, Jr. v. FNU Knight*, 2010 WL 2079696, *5 (11th Cir. May 26, 2010).

Here, Marbury does not dispute the Defendants' version of the facts leading up to the June 30, 2008, incident, beginning with the fact that he did not follow prison procedures requiring him to wait in line for his work supplies.  Marbury was told by C/O Girtman to return to his cell, and that he would be able to report to work the following day.  Instead, Marbury became agitated and began cursing, which caused C/O Girtman to call for assistance.  Upon

arrival, C/O Claytor handcuffed Marbury without any resistance.  After Marbury was handcuffed, he became increasingly agitated and would not listen to instructions to remain calm. Marbury became violent, pulling away from C/O Hicks and, in the process, elbowing C/O Hicks in the face, causing a swollen lip.  Lt. Shaw and C/O Girtman affirmed that Marbury elbowed C/O Hicks.  In fact, Lt. Shaw noted that Marbury was extremely violent, "twisting his body and throwing himself around, like a 'raging bull.'"  In order to maintain control, Lt. Shaw used her mace.  Marbury denies he purposely elbowed C/O Hicks.  Nonetheless, he submitted evidence indicating that he told his mental health counselor he could not remember hitting the officer, but he could not deny the possibility that it happened.  Pursuant to procedures, Marbury was immediately taken to the prison medical center for examination.

Although Marbury states that he complained of finger pain to the medical staff on June 30, 2008, the record reflects only complaints of shoulder and arm pain.  Documents indicate Marbury did complain to the medical staff of finger pain on July 2, 2008, when he submitted a request for health services.  A reasonable jury could reject Marbury's version of the facts as to the date he first complained of finger pain.

Even if the Court accepts Marbury's allegation of a broken finger stemming from the June 30 incident, Marbury cannot produce evidence that the force was applied "maliciously and sadistically to cause harm" rather than a "good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7-8.  Marbury must raise a genuine issue of material fact that the force used was unreasonable, thus excessive, under the circumstances.  He contends that there was no need for C/O Hicks to apply the escort procedure as he willingly cooperated when the handcuffs were placed on him.  Yet, the evidence shows that C/O Hicks was struck in the mouth by Marbury's

elbow due to Marbury's thrashing around, after the officers ordered him to remain calm. "Inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986).

Although *de minimis* injuries may form the basis of an Eighth Amendment excessive force claim, the extent of a plaintiff's injury is relevant to determine whether the use of force is necessary and "may also provide some indication of the amount of force applied." *Willkins*, 130 S.Ct. at 1178. Significant physical injury is not required. *See Hudson v. McMillian*, 503 U.S. 1, 10, 112 S.Ct. 995 (1992) (bruises, swelling, loosened teeth, and cracked dental plate are not *de minimis* injuries); *Escobar v. Zavaras*, 1998 WL 314303 *3, Case No. 97-1303 (10th Cir. Jun. 2, 1998) (issue of fact concerning an Eighth Amendment claim as to whether plaintiff's broken finger was deliberate, intentional conduct of defendants); *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996) (plaintiff sustained cuts, bruises, swollen hand, and possible broken fingers from beating by guards). These cases, however, are distinguishable from the instant matter.

In *Escobar*, the plaintiff argued that his finger was broken by the "deliberate, intentional, malicious and sadistic" conduct of a prison guard when the guard deliberately slammed a tray slot on the plaintiff's finger. The Defendant argued in a summary judgment motion that his action was, at most, negligent. There was no indication that Escobar was acting disruptively at the time of his injury. The Circuit Court ruled that there was a question of fact concerning the Eighth Amendment claim and remanded. *Escobar* at *3. In *Mitchell*, the plaintiff posed no disciplinary problems nor displayed threatening conduct, thereby pointing to malicious behavior

17

by the guards.  *Mitchell*, 80 F.3d at 1440-1441.  In the instant case, Marbury presented

conflicting allegations as to how his finger was broken.  First, his verified complaint states, ". . .

C/O Hicks, Jr., handcuffed me and broke finger instantly . . ."  (Doc. No. 1 at 3.)  Second, in

Marbury's affidavit he states that prior to C/O Hicks arrival on the scene, he was in handcuffs,

(Marbury Affid. at ¶ 2), and upon Hicks arrival, he  "immediately attacked" Marbury based upon

"racial motivation" and placed "malicious and sadistic pressure on [his] finger."  (Marbury

Affid. at ¶¶ 3-4.)  Marbury offers no explanation for the conflicting statements as to how and

when his finger was broken.  He now apparently concedes he was not handcuffed by C/O Hicks

as alleged in his complaint.  *See Ware*, 87 F.Supp.2d at 647.  Furthermore, there is no dispute,

that Marbury's disruptive conduct caused C/O Girtman to call for assistance.  Marbury

admittedly created a disturbance requiring the officers to gain and maintain control.  Moreover,

Marbury, while meeting with a health counselor, did not deny the possibility that he elbowed

C/O Hicks in the face.  (Doc. No. 113-6.)

  Federal courts have noted that it would be helpful for a plaintiff in a § 1983 case charging

prison guards with cruel and unusual punishment to have an eyewitness or other probative

evidence demonstrating that the officer acted wantonly or maliciously.  *See Hardy v. Vieta*, 174

Fed. Appx. 923 (6th Cir. 2006); *Briggs v. Lloyd*, 2009 WL 860327, Case No. 3:06cvP581-S

(W.D. Ky. Mar. 27, 2009).   In remanding after a grant of summary judgment, the *Hardy* Court

concluded that the plaintiff had "sufficiently alleged, and provided evidence from which an

inference [could] be drawn" that a corrections officer wantonly inflicted harm.  In *Hardy*, the

plaintiff alleged that the corrections officer, for no apparent reason, smashed the plaintiff

between a steel door and a brick wall, injuring his arm and lower back.  The *Hardy* Court

18

concluded that, even though the plaintiff did not have any serious injuries, the objective prong of

the test was met.  Furthermore, the record contained evidence that the corrections officer acted

wantonly, not only by way of plaintiff's own statements but also from an eyewitness.  The

witness testified that upon seeing the plaintiff, the corrections officer "uttered words indicating

wantonness and premeditation" and that after the door slammed on plaintiff, the corrections

officer left the cell block laughing.

In *Briggs*, the district court applied *Hardy* and concluded that the plaintiff was not able to

prove that the defendants acted wantonly or maliciously, as plaintiff submitted no affidavit or

other probative evidence demonstrating that anyone witnessed the confrontation.

Here, Marbury submitted no eyewitness affidavits to support his allegations of malicious

conduct, even though there is evidence other inmates were present and waiting in line for their

work clothes and materials.[8]  Moreover, the facts, viewed in the light most favorable to Marbury,

show that he cursed at the officers, failed to obey their orders, and struggled after being

handcuffed.  A reasonable jury could conclude that Marbury acted inappropriately and posed a

disciplinary problem.

Lastly, applying the five factors that federal courts use in analyzing the subjective

component, the Court finds no malicious or sadistic behavior by C/O Hicks.  *See Hudson*, 503

U.S. at 7; *Whitley*, 475 U.S. at 321.  The Defendants found the necessity for the application of

force as Marbury was becoming increasingly agitated.  Ultimately, Lt. Shaw used pepper spray

---

[8]At a telephonic status conference held on May 24, 2010, Marbury informed the Court of
an eyewitness to the September 24, 2008, incident.  Defendants located the person and
interviewed him, but he was not willing to sign a sworn affidavit.  (Doc. No. 125.)  As to the
June 30, 2008, incident, Marbury did not claim there were any witnesses.

to regain control.  Allowing Marbury to continue his escalating conduct would put the staff and other prisoners at risk.  Furthermore, the officers made several attempts to temper the severity of their responses. First, C/O Girtman initially believed if Marbury returned to his cell, he would have been able to return to work the following day.  C/O Girtman also tried to discuss the situation with Marbury.   Lt. Shaw's use of mace to control Marbury, rather than using more physical means, indicates an interest in tempering the severity of the force applied.

For these reasons, it appears that Defendants used the force necessary in a good faith effort to maintain discipline and order.  Marbury's injury does not indicate that the amount of force used, under the circumstances, was more than necessary to gain and maintain control.  *See Wilkins* (affirming *Hudson* and stating that the extent of the injury may provide some indication as to the amount of force applied); *see also Redd v. Conway*, 160 Fed. Appx. 858, 861 (11th Cir. 2005) (affirming district court's order granting summary judgment to defendants on an excessive use of force claim when evidence showed that the officers used only the amount of force necessary to restrain the resistive inmate and the injuries the inmate sustained were minor, including a twisted ankle and an abrasion on the cheek.)  While it is unclear how or when Marbury's finger was broken, no reasonable jury would find that the force used by the Defendants, including C/O Hicks, reached constitutional dimensions under the Eighth Amendment.

### B.  Eighth Amendment - Failure to Protect against C/O Claytor and Lt. Shaw

Marbury further contends that C/O Claytor and Lt. Shaw witnessed Hicks physically

20

abuse Marbury, but failed to protect him.[9]  (Doc. No. 1 at 4; Marbury Affid., ¶ 5.)  Marbury's

failure to protect claim, however, cannot stand as the Court has concluded that no reasonable

jury could find that C/O Hicks' conduct was malicious.

Under the Eighth Amendment, prison officials are required to take reasonable measures

to guarantee the safety of inmates within their custody.  *Farmer v. Brennan*, 511 U.S. 825,

833-34, 114 S.Ct. 1970, 1976-77 (1994) (citations omitted); *see also Matthews v. Armitage*, 36

F.Supp.2d 121, 124 (N.D.N.Y. 1999) (Homer, M.J.) (*citing, inter alia, Farmer*). When

examining a failure to protect claim under the Eighth Amendment, a court must determine

whether the inmate has demonstrated that 1) he was incarcerated under conditions posing a

substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to

the inmate's plight.  *Farmer*, 511 U.S. at 834, 837, 114 S.Ct. at 1977, 1979; *Matthews*, 36

F.Supp.2d at 124-25; *Coronado v. Lefevre*, 886 F.Supp. 220, 224 (N.D.N.Y. 1995).  This

analysis also entails  objective and subjective inquiries, similar to the analysis previously

described, as to whether a guard used excessive force in violation of the Eighth Amendment.

The actions taken by C/O Claytor and Lt. Shaw were reasonable and appropriate.  They

took reasonable steps to safeguard Marbury's safety, while trying to maintain control.

_____

[9]In addition, Marbury asserts that Lt. Shaw ignored his warnings that he had a heart
condition and proceeded to spray him with mace without first properly assessing the situation.
(Doc No. 1 at 4.)  Marbury, however, presented no argument to support this claim, and upon
review of the record, there was no evidence Marbury suffered any harm beyond what is normally
sustained from the controlled use of mace.  (Doc. No. 123; Bates No. 000778.)  Federal courts
have concluded that the use of a chemical agent or stun gun is not a constitutional violation.  *See
Caldwell v. Moore,* 968 F.2d 595 (6th Cir. 1992); *see also Soto v. Dickey*, 744 F.2d 1260, 1270
(7th Cir. 1984) (*citing Lock v. Jenkins*, 641 F.2d 488 (7th Cir. 1981)); *Poindexter v. Woodson*, 510
F.2d 464, 466 (10th Cir.), *cert. denied*, 423 U.S. 846 (1975); *Clemmons v. Greggs*, 509 F.2d
1338, 1340 (5th Cir.), *cert. denied*, 423 U.S. 946 (1975); *McCargo v. Mister*, 462 F.Supp. 813 (D.
Md. 1978).

### C. Reclassification

Marbury also appears to raise an argument in his summary judgment motion that his due process rights were violated when he was transferred from MCI, a minimum security prison, to SOC, a maximum security prison. (Doc. No. 60 at 4.) However, the complaint presently before the Court does not raise this as a constitutional violation, but instead Marbury requests to be returned to MCI by way of injunctive relief.[10] (Doc. No. 1 at 6.)

An inmate has no constitutional right to be held in a specific security classification. *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 244, 96 S.Ct. 2532 (1976) (convict enjoys no due process protection from being transferred from a low to a maximum-security prison). A protected liberty interest could arise, however, if the assignment to a higher security level imposes an extreme restraint which is not ordinarily part of the prison experience. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005) (finding that assignment to a "supermax" prison imposes an atypical and significant hardship because the aggregate of conditions are more restrictive than other prisons).

Marbury offers nothing to show that he has been subjected to such a hardship as a result of his reclassification. Nor do the allegations before the Court raise a violation of a protected liberty interest by his being subjected to extreme restraint. He merely requested relief to be "reclassed [sic] back to Level 3 and returned to population here at [SOC] till [sic] decision of verdict and return to [MCI]." (Doc. No. 1 at 6.) Therefore, there is no due process violation regarding his reclassification.

------------------------

[10]Marbury's original complaint, prior to the Court's dismissal of other defendants and claims, alleged a violation of his due process rights in his reclassification against Warden Hudson, Deputy Warden Sheldon, and Director Collins. (Doc. No. 1 at 5.)

22

**D. Default Judgment**

Marbury also requests this Court to enter default judgment against Defendants as he believes they were "disobedient" in providing discovery material.  (Doc. Nos. 67, 86.) Defendants opposed the request as frivolous saying all discovery requests have been fulfilled. (Doc. No. 95.)  The Court is unaware of any properly raised discovery dispute.  In any event, default judgment is not a remedy available to Marbury.

### V.  Conclusion

For the above reasons, the Court grants Defendants' Motion for Summary Judgment as to C/O Hicks, C/O Claytor, and Lt. Shaw regarding the June 30, 2008 incident.  (Doc. No. 84.)  The Court denies Marbury's summary judgment motions.  (Doc. Nos. 60, 67.)

IT IS SO ORDERED.

  s/ Greg White
United States Magistrate Judge

Date:   August 5, 2010

23