**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CARLTON MARBURY,** | ) | **CASE NO. 1:09CV407** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **v.** | ) | |
| | ) | |
| **TIM HICKS, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **MEMORANDUM OPINION & ORDER** |

On February 23, 2009, Carlton Marbury ("Marbury"), *pro se* plaintiff, and currently an inmate at the Southern Ohio Correctional Facility ("SOC"), filed an action pursuant to 42 U.S.C. § 1983 alleging constitutional violations against numerous Mansfield Correctional Institution ("MCI") employees.  Specifically, the verified complaint alleged that the Defendants inflicted unnecessary pain upon Marbury and then were deliberately indifferent to his alleged serious medical needs.  On August 5, 2010, the Court granted summary judgment for defendants C/O Tim Hicks, Jr., C/O Brian Claytor, and Lt. Pam Shaw regarding a June 30, 2008, incident.  The final issue before the Court concerns an alleged September 24, 2008, incident regarding Defendant Corrections Officer J.W. Windom[1] ("C/O Windom.")  Marbury claims C/O Windom inflicted unnecessary pain upon him.  Marbury seeks compensatory and punitive damages.  Cross-motions for summary judgment have been filed by the parties.  (Doc. Nos. 136, 140.)  The parties consented to the jurisdiction of the undersigned Magistrate Judge pursuant to the authority of 28 U.S.C. § 636(c)(2).  For the following reasons, Marbury's motion for summary judgment is denied and C/O Windom's motion for summary judgment is granted.

---

[1]C/O Windom's answer refers to "Harold Windom," but the summary judgment motion and attached affidavit, refers to "J.W. Windom."

The complete procedural history is set forth in the Court's opinion dated August 5, 2010, and will not be repeated here.  (Doc. No. 126.)

## II. Facts

Marbury alleges that on September 24, 2008, while he was in Local Control (segregation) at MCI, C/O Windom assaulted him.  (Doc. No. 1-1 at 19; Doc. No. 24 at 3.)  Specifically, he alleges that C/O Windom "chopped" him in the neck/head in front of Sgt. Dewalt's office.  (Doc. Nos. 24 at 3; 42 at 4.)  Marbury contends that the incident occurred while C/O Windom was returning him to his cell.  (Doc. No. 142 at 3.)  Marbury had attended a hearing where he learned he was being charged with "assault of a corrections officer" and now would be transferred to a Level 4 prison.  *Id.*

C/O Windom states that as he was escorting Marbury to his cell on September 24, 2008, Marbury stopped to talk to another inmate.  (Doc. No. 136-1, Windom Decl., ¶ 3.)  C/O Windom then placed his hand on Marbury's shoulder in order to get his attention.  *Id.*  Marbury fell to the ground and said something to the effect of: "You gave me one of those Ninja chop[s].  Half my body is paralyzed.  However, if you give me a cup of coffee, I'll go to my cell."  (Windom Decl., ¶ 4.)  Marbury does not deny that he made this statement to C/O Windom.  C/O Windom next states that Marbury voluntarily proceeded to his cell.[2]  *Id.*  C/O Windom further acknowledged that he had no other problems with Marbury.  (*Id.* at ¶¶ 3, 4, 8.)

On September 26, 2008, Marbury was examined by Nurse Barker at 9:00 p.m. during sick call.  (Doc. No. 137, Barker Decl., ¶ 2.)  Barker noted that Marbury complained that he had been assaulted on the morning of September 26, 2008, not September 24.  (Barker Decl., ¶ 3.)  He further noted that Marbury refused to remove his clothes to be examined and that, otherwise, no physical injuries were noted.  (Barker Decl., ¶ 4.)

On October 15, 2008, Marbury filed a grievance concerning the alleged incident.[3]  (Doc.

---

[2]C/O Windom stated that he believed he took a cup of coffee to Marbury in his cell.  *Id.*

[3]Marbury contends that he reported the incident to Corrections Officer Bumphus and, with his help, Marbury then filed a grievance on September 24, 2008.  (Doc. No. 142 at 5.)

2

No. 136-7 at 3.)  On November 7, 2008, Marbury filed an Investigator's Office Statement in which he mentions an inmate witness, Ike Howard,[4] and that the alleged incident should have been captured on a surveillance camera.[5]  (Doc. No. 136-7 at 4.)

On November 7, 2008, Sharon Berry, Institutional Inspector, denied Marbury's grievance stating there was insufficient evidence to support the claim.  Specifically, she stated:

> I found no record of an incident on 9/24/08.  Lt. Iceman reported the L/C committee saw you 9/24/08.  Lt. Iceman reported that he did not witness any force incident with you 9/24/08.  Lt. DeWalt reported that he did not witness C/O Windom (correct name) use force against you 9/24/08.  C/O Neidermier reported that he did not witness force used against you by C/O Windom.  C/O Windom reported that you acted like he hit you 9/24/08 when, in fact, he had not touched you.  Your medical file indicates you told a nurse 9/26/08 that you were assaulted this a.m. and refused an assessment.  RN Barker noted that no marks were observed.  You alleged the force was used 9/24 in your ICR and grievance, you told the nurse the force was used 9/26/08.  Dave See, Inspector, at SOCF obtained a statement from you at my request 11/7/08.  Your statement differs from the grievance in that you allege C/O Windom took your handcuffs off in the statement.

(Doc. No. 136-7.)

### III. Standard of Review

Federal Rule of Civil Procedure 56(c)(2) governs summary judgment motions and states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[4]Howard's unsworn statements are not part of the record and, therefore, do not constitute evidence under Fed.R.Civ.P. 56(c).  (Doc. No. 143.)  "[A] court may not consider unsworn statements when ruling on a motion for summary judgment."  *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991).

[5]Ohio has no requirement mandating preservation of videotaped evidence regardless of a discovery request.  *See State v. Durham*, 2010 WL 1254355, **2-5 (Ohio App. 8th Dist., Apr. 1, 2010).

248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Liberty Lobby*, 477 U.S. at 257.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

Courts are given wide latitude in considering any document of record in its analysis of a summary judgment motion, regardless of when the document was filed and for what purpose. For example, an affidavit that is on file in a case, regardless of the purpose for which it was prepared and filed, can be considered by the court in deciding a motion for summary judgment. *See Carmona v. Toledo*, 215 F.3d 124, 132 n. 7 (1st Cir. 2000); *McLaughlin v. Liu*, 849 F.2d 1205, 1206 n. 3 (9th Cir. 1988); *McCullough Tool Co. v. Well Surveys, Inc*., 395 F.2d 230, 236 n. 7 (10th Cir. 1968); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal

4

Practice & Procedure § 2722, at 378 (3d ed. 1998).

The summary judgment standard does not change simply because the parties presented cross-motions. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  The fact that both parties have moved for summary judgment does not mean a court must grant judgment as a matter of law for one side or the other; rather, a "court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Id*.; *Profit Pet v. Arthur Dogswell, LLC,* 603 F.3d 308, 312 (6th Cir. 2010).

It is well settled that "inartfully pleaded allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers."  *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Further, allegations in *pro se* pleadings are entitled to "liberal construction" which sometimes requires "active interpretation ... to encompass any allegation stating federal relief." *Id*.

### IV.  Law and Analysis

Section 1983 provides a private cause of action for those persons subject to a deprivation of the "rights, privileges or immunities" guaranteed under the Constitution when that deprivation is effected by a person operating "under color of any statute, ordinance, regulation, custom, or usage" of a governmental entity.  42 U.S.C. § 1983.  "[T]he violation of a federally protected right" is necessary for there to be liability against a government official under § 1983.  *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008); *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005).  In addition, the deprivation must be committed by a person acting under color of law.  *Grinter* at 572; *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

Under the Prison Litigation Reform Act ("PLRA"), prisoners must properly exhaust "such administrative remedies as are available" prior to filing a section 1983 action.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  There is no dispute that Marbury exhausted his administrative remedies as required.

Marbury contends that C/O Windom used excessive force in violation of the Eighth

5

Amendment when he allegedly struck Marbury in the head/neck area.  (Doc. Nos. 24 at 3; 42 at 4.)  C/O Windom contends that he simply placed his hand on Marbury's shoulder in order to continue guiding him towards his cell.  (Doc. No. 136 at 2.)  C/O Windom argues that Marbury's allegations have been found not credible by the prison administrators, and more importantly, he presents no evidence of any injury.  (Doc. No. 136 at 3.)

The Eighth Amendment provides that the use of excessive force against prisoners may constitute cruel and unusual punishment.  *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995 (1992).  However, not every use of intentional force upon an inmate by a prison official will rise to the level of an Eighth Amendment violation.  *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).  "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment."  *Id*. (citations omitted).  In order to determine if prison officials used improper force or punishment, the court must look at the objective nature of the force used, the resulting harm, and the subjective intent of the officers.  *See Wilkins v. Gaddy*,  – U.S. – , 130 S.Ct. 1175 (2010); *Hudson*, 503 U.S. at 7.

The objective component of an Eighth Amendment claim of cruel and unusual punishment based on excessive force used by prison guards focuses on the effect of the guards' conduct.  *See McGowan v. Cantrell*, 2010 WL 446914, *11, Case No. 1:05cv334 (E.D. Tenn., Feb. 2, 2010); *Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000).  Objectively, a plaintiff must establish that the use of force reached constitutional dimensions.  A *de minimis* use of force will rarely suffice to state a constitutional claim, however, a plaintiff is not required to show the application of force resulted in serious injury.  *Hudson*, 503 U.S. at 8.  Rather, the key inquiry under *Hudson* is whether the alleged conduct involved "unnecessary and wanton infliction of pain."  *Id*.

Viewing the evidence in the light most favorable to Marbury, this Court concludes that he has not established a claim of excessive force in violation of the Constitution.  First, the Court notes that Marbury has failed to support his opposition to C/O Windom's Summary Judgment

motion as required by Fed.R.Civ. P. 56(e).[6]  Marbury has not submitted any evidence that

supports more than a *de minimis* injury.  The Court has carefully reviewed the complete file,

including Marbury's verified complaint, all unverified allegations submitted by him, and his

opposition to summary judgment.  Marbury does not go beyond the pleadings and designate

"specific facts showing that there is a genuine issue for trial,"  Fed.R.Civ.P. 56(e); *Celotex Corp.

v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  His broad, conclusive

statements are insufficient, and missing facts will not be presumed.  *See Lugan v. National

Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("[T]he purpose

of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact

essential to the other side's case to demand at least one sworn averment of that fact before the

lengthy process of litigation continues.")

Moreover, the Sixth Circuit recently observed "an excessive-force claimant must show

something more than *de minimis* force."  *Leary v. Livingston County*,  528 F.3d 438, 443 (6th

Cir. 2008).  In *Leary*, the Sixth Circuit found an excessive force claim to be *de minimis* where

the defendant officer hit the plaintiff on the back of his neck with a karate-type chop.  The *Leary*

Court found that the plaintiff  "did not suffer any objectively verifiable injury from the blow.

There was no hospital visit after the encounter, no doctor's visit, no bruise, nothing in short to

indicate that the encounter rose above a 'negligible [use of] force' or caused anything more than

a 'trifling injury.'"  *Leary* at 443 (*quoting Riley v. Dorton*, 115 F.3d at 1167).  The same

analysis and result apply here.  Marbury's single allegation of force in this lawsuit is that C/O

Windom struck him in the neck/head.  Marbury has not presented evidence that he suffered "any

objectively verifiable injury" from that action.  *See id.*  "Nothing in short to indicate that the

encounter rose above a 'negligible [use of] force' or caused anything more than a 'trifling

---

[6]Fed.R.Civ.P. 56(e) requires that when a properly supported motion for summary judgment is made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party."

injury.'" *Id*. (*quoting Riley*, 115 F.3d at 1167 (*en banc*)).  The *Leary* Court instructed:

> The point of the *de minimis* rule is to make it clear that the Constitution does not
> become a 'font of tort law' that the  federal courts 'superimpose[ ] upon whatever
> systems' the States already have.  *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct.
> 1155, 47 L.Ed.2d 405 (1976)).  Otherwise, every minor touching would become
> actionable, blurring the lines between the state courts' enforcement of their tort
> laws and the federal courts' enforcement of the Constitution.  Whatever else non-
> actionable *de minimis* force may be, it must include a touching that neither 'hurt'
> nor threatened the individual.

*Leary*, 528 F.3d at 445.

Marbury has not offered any medical evidence of injuries from the September 24, 2008, incident.  He did not request medical attention until two days later, and then refused to be examined.  Nurse Barker noted that no injuries were observed.  (Doc. No. 137, Barker Decl., ¶ 4.)  As the Sixth Circuit indicated in *Leary*, though not dispositive, it is relevant to consider the absence of hospital and doctor's visits.  *Id*. at 443.  The absence of such medical evidence is consistent with C/O Windom's use of force, if any, being objectively reasonable.

Furthermore, none of the prison staff witnessed C/O Windom assault or use force against Marbury.  Marbury asserts that the assault took place in front of Corrections Officer Neidermeier ("C/O Neidermeier").  (Doc. No. 142 at 4.)  C/O Neidermeier, however, refutes this allegation as he states that he observed no such physical assault.  (Doc. No. 136-2, Neidermeier Decl., ¶ 4.)  Marbury later asserted that the attack took place in front of a desk clerk who refused to give his name, but that he was "white elderly male with big nose about 60+ years old."  (Doc. No. 142 at 4.)  Defendant submitted a declaration from Corrections Officer Frank Miller ("C/O Miller") who was working at the desk in Unit 5 Local Control at the time of the alleged incident.  Miller stated that he never witnessed any use of force incident between Marbury and C/O Windom.  (Doc. No. 136-4, Miller Decl., ¶¶ 2, 4, 5.)  Marbury further purports that the alleged assault occurred in the presence of Sgt. Robert DeWalt, as it took place directly outside of his office.  (Doc. No. 24 at 3.)  Sgt. DeWalt, however, states that he did not witness any attack.  (Doc. No. 136-3, DeWalt Decl., ¶ 7.)

## V.  Conclusion

For the above reasons, the Court grants Defendant's Motion for Summary Judgment as to

C/O Windom regarding the September 24, 2008, incident.  (Doc. No. 136.)  The Court denies Marbury's summary judgment motion.  (Doc. No. 140.)  Accordingly, the case is hereby dismissed.

IT IS SO ORDERED.

_s/ Greg White_____
United States Magistrate Judge

Date:   __November 3, 2010___